IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOHAMMED ALAM, ROGER | § | |
| BURAIMOH, FREDERICO ORNELAS, | § | |
| DANIEL CASEY, PATRICIA BENSON, | § | |
| DERIC JONES, WILLIAM KENT | § | |
| MYATT, JAMES LOUGHLIN | § | 1:19-CV-22-LY |
| | § | |
| v. | § | |
| | § | |
| BMW OF NORTH AMERICA, LLC | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss First Amended Complaint or, In the Alternative, to Sever Plaintiffs' Claims (Dkt. No. 10), Plaintiffs' Response (Dkt. No. 9), and Defendant's Reply (Dkt. No. 13). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. GENERAL BACKGROUND

Plaintiffs allege that their BMW vehicles consume an excessive amount of engine oil and that BMW has failed to honor the terms of their warranties. Am. Compl., Dkt. 8. Plaintiffs Mohammed Alam, Roger Buraimoh, Frederico Ornelas, Daniel Casey, Patricia Benson, Deric Jones, William Kent Myatt, James Loughlin (together, "Plaintiffs") filed this suit against BMW of North America, LLC ("BMW") on January 8, 2019. Dkt. No. 1. Each alleges that they purchased vehicles with an "N63" engine, which BMW used in certain vehicles for the 2009 to 2014 model years. *Id.* ¶ 79. They allege that when they purchased the vehicles at BMW dealerships, they relied on material representations by BMW agents regarding BMW's New Vehicle Limited Warranty, including the

representation that BMW would repair their vehicles' engines. *Id.* ¶ 71. Under its New Vehicle Limited Warranty, BMW promised to repair or replace components found to be defective in material or workmanship during the 4-year / 50,000-mile period following vehicle delivery to the consumer. *Id*. ¶ 72. After purchasing their vehicles, Plaintiffs discovered that their engines contain an alleged manufacturing defect that causes the vehicles to consume engine oil at an extremely rapid rate. *Id.* ¶ 77. Plaintiffs had to add additional oil between the recommended oil change intervals to prevent their engines from failing, and contend they suffered related damage. *Id.* ¶ 78. For example, Plaintiff Ornelas alleges that within a few months of purchase, his vehicle required adding a quart of oil every 300 to 500 miles, well before BMW's recommended oil change intervals. *Id.* ¶¶ 28, 99.

Plaintiffs allege that the N63 is now "widely known" as defective in the automotive industry for consuming excessive oil and requiring frequent repairs compared with similar vehicles. *Id.* ¶ 82; *see also* ¶¶ 83-91, 93-102. Plaintiffs also allege that BMW knew about the increased oil consumption but failed to disclose it to consumers at the time of sale. *Id.* ¶¶ 88, 92, 111. After "thousands of customer complaints" about the defect, BMW introduced an "N63 Customer Care Package" offering free inspections and parts replacements. *Id.* ¶ 102-03. Plaintiffs allege that these "mask, but do not correct, the serious design and/or manufacturing defects." *Id.* ¶ 102. BMW also offered discounts for replacement BMW vehicles. *Id.* ¶ 105.

Plaintiffs allege that the defect has caused them to incur costs for additional service and maintenance, and for BMW-approved engine oil. They are discouraged from traveling long distances. They contend they will also "suffer significant loss" when they sell their vehicles "because the reputation of these vehicles has been impaired by now-public research establishing that these vehicles suffer from the oil consumption defect." *Id.* ¶ 113.

Plaintiffs assert four causes of action: breach of express warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., (hereinafter "the MMWA"); breach of an implied warranty

of merchantability under the MMWA and Tex. Bus. & Com. Code § 2.314; breach of express warranties pursuant to Tex. Bus. & Com. Code § 2.313; and deceptive trade practices pursuant to Tex. Bus. & Com. Code § 17.41, et seq. *Id.* ¶¶ 134-57. Plaintiffs ask this Court to award damages, including a refund of all payments made by Plaintiffs on the subject contracts, equitable relief in the form of replacement or repair of the vehicles, and punitive damages for BMW's alleged intentional concealment of the defect. *Id.* at 30-31.

BMW moves to dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6), asserting that: (1) Plaintiffs' claims do not meet the amount in controversy requirement of $50,000 under the MMWA or $75,000 under 28 U.S.C. §1332(a); (2) the statute of limitations bars Plaintiffs' claims; and (3) even if this Court has subject matter jurisdiction and their claims are not time-barred, Plaintiffs fail to allege essential elements of their claims. Dkt. No. 10. In the alternative, BMW moves to sever Plaintiffs' claims because they do not arise from the same transaction or occurrence and each Plaintiff will raise different questions of law and fact. *Id.* at 20. The Court will address the motion to sever first.

## II.  THE MOTION TO SEVER

**A.      Legal Standard**

Under the Federal Rules of Civil Procedure, persons may join in a single action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20 (a)(1). "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21.

3

"Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance." *Stein v. Navient Sols., LLC*, 2018 WL 2124108, at *2 (W.D. Tex. May 7, 2018) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). "Courts have described Rule 20 as creating a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Id.* If both prongs are met, "permissive joinder of plaintiffs . . . is at the option of the plaintiffs." *Id.* (quoting *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995)). "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo*, 600 F.3d at 521 (internal citations omitted). "[A] trial court has broad discretion to sever." *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Where a court grants severance, the appropriate relief is to sever or "dismiss the claims of any misjoined parties," not to dismiss the entire action. *Acevedo*, 600 F.3d at 522 (citing FED. R. CIV. P. 21).

**B.     Analysis**

BMW argues that the Court should sever Plaintiffs' claims because they do not arise from the same transaction or occurrence and that each Plaintiff will present different questions of law and fact because (1) the vehicles at issue are different years and models, with "vastly different purchase, maintenance, and usage histories," (2) the vehicles were purchased used from different retailers, (3) "[t]he specific representations made in connection with the oil consumption complaints vary from case to case," and (4) Plaintiffs are from different cities in Texas. Dkt. No. 10 at 20.

Plaintiffs respond that their claims do arise from the same series of transactions or occurrences: "BMW's use of defective N63 engine components and refusal or failure to repair the same in violation

4

of its warranty." Dkt. No. 12 at 19. Each Plaintiff has the same N63 engine; each alleges excessive oil consumption as a result of a defect in the engine; each presented the vehicle to an authorized BMW dealer complaining of this problem; each dealer "told Plaintiffs that the excessive engine oil consumption did not warrant any repairs and failed to repair the vehicles." *Id.* at 19-20. Plaintiffs also allege that they received "substantively identical" written warranties. *Id.* at 19. Plaintiffs assert common questions of law, including "whether defects in the same N63 engines results in excessive oil consumption; whether and when BMW became aware of the defect in the N63 engines; what BMW instructed its dealerships regarding how to address complaints of oil consumption; and whether, as Plaintiffs allege, BMW deliberately concealed the defect from Plaintiffs." *Id.* at 20. Plaintiffs contend that these common questions of fact and law weigh in favor of judicial economy. *Id.* at 21. For example, they would present common witnesses, including Defendant's expert, Plaintiffs' expert, and Defendant's Rule 30(b)(6) witness. *Id.*

The Court agrees that Plaintiffs' claims raise some common questions of law and fact. It is less clear that their claims arise from the same series of transactions or occurrences, though it is arguable that they could meet this test based on all having purchased a vehicle with an allegedly defective N63 engine from a BMW-authorized dealer. However, even assuming that Plaintiffs satisfy the two-prong test for joinder under Rule 20, the differences in Plaintiffs' fact allegations indicate that trying their claims together is likely to create confusion and undermine judicial economy. Plaintiffs' Complaint contains substantial factual differences among their claims, including different vehicle makes and models, different allegations regarding oil consumption, different maintenance histories, different purchase locations, and different representations by different BMW agents at each dealership.

Already in their briefing on the instant motion, Plaintiffs present their argument in general terms that do not assist the Court to make specific findings as to each Plaintiff.[1] These generalized submissions reinforce the Court's impression that the factual differences between the Plaintiffs' claims are likely to lead to inefficiency if the claims remain consolidated. *See Acevedo*, 600 F.3d at 522 (finding that, even though plaintiffs satisfied the two-prong test, "[t]he district court was within its wide discretion to conclude that trying these claims together would be too challenging logistically, given the divergent working conditions at each store and the different defenses applicable to each plaintiff's claims."); *cf. Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214–15 (5th Cir. 2000) ("Given [that plaintiffs otherwise qualified for joinder] . . . and the fact that the plaintiffs fail to show any factual distinction between the primary claim and the third-party claim, the district court correctly concluded that it was without discretion to sever."). Differing facts and potentially different

---

[1] For example, because Plaintiffs do not offer specific allegations or evidence regarding any individual plaintiff's damages, the Court is unable to determine whether Plaintiffs have plausibly alleged that any individual plaintiff satisfies the amount in controversy requirement under either MMWA or 28 U.S.C § 1332(a). Plaintiffs demand $100,000 in damages in their civil cover sheet, *see* Dkt. No. 1-1, but the Complaint does not allege any specific calculation or estimation of damages. Similarly in their response to the motion to dismiss, Plaintiffs only offer a conclusory assertion that "[w]hen the sought-after treble damages are combined with Plaintiffs' other damages arising out of BMW's sale of expensive and defective vehicles . . . and . . . [DTPA] statutory attorney's fees . . . each Plaintiff separately satisfies the $75,000 amount-in-controversy jurisdictional minimum." Dkt. No. 12 at 8. It is the burden of the party contending federal jurisdiction exists to demonstrate that the amount in controversy is met. *Scarlott v. Nissan North America, LLC*, 771 F.3d 888-89 (5th Cir. 2014). If the amount at issue is not apparent from the face of the complaint, then the party must offer "summary judgment-type evidence" to demonstrate the amount in dispute. *Id.* at 888. Here, the Plaintiffs failed to offer any individualized pleading or evidence on this issue. Without any specific allegations or evidence to indicate an amount in controversy, the Court cannot find that Plaintiffs have met that burden. *See Scarlott, LLC*, 771 F.3d at 890 ("Unfortunately, no party has provided us with the relevant numbers to plug into the [] formula, and we are thus in no position to conclude that jurisdiction under § 2301(d)(1)(B) existed over the Magnuson–Moss claims." (quoting *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521-22 (7th Cir. 2003)).

applicable defenses are sufficient factors for this Court to find that severance is appropriate to ensure judicial economy. *See Acevedo*, 600 F.3d at 522.

"Misjoinder of parties is not a ground for dismissing an action." *Acevedo*, 600 F.3d at 520 (quoting FED. R. CIV. P. 21). "As such, after the claims of misjoined parties are severed or dropped, at least one plaintiff typically remains to pursue his or her claims to a final judgment." *Id.* (citations omitted). Accordingly, the Court recommends that the District Judge sever the claims of all Plaintiffs except Alam, and dismiss those claims without prejudice to being re-filed individually.

### III. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Dismiss First Amended Complaint or, In the Alternative, to Sever Plaintiffs' Claims (Dkt. No. 10), and **RECOMMENDS** that the Motion to Sever be **GRANTED**, and the Motion to Dismiss be **DISMISSED AS MOOT.**

To effectuate the above recommendation, the undersigned **RECOMMENDS** that the District Judge **SEVER** the claim by Mohammed Alam from each of the other Plaintiffs' claims, such that his individual claim shall remain pending under this cause number, and **ORDER** the claims of all other Plaintiffs be **DISMISSED** without prejudice to being re-filed as individual cases. Further, the undersigned **RECOMMENDS** that the District Judge **ORDER** Alam to file an amended complaint within a time certain, repleading his case individually, and with sufficient particularity to demonstrate the amount he contends is in controversy. The other plaintiffs should be similarly admonished that, should they file new individual suits, they too must plead their damages with specificity.

Lastly, the Court **ORDERS** the case to be **RETURNED** to the District Court as there are no further motions pending before the undersigned.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of November, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE